Third case this morning is Patrick G. v. Harrison School District No. 2, 20-1372. Counsel for acknowledgement, you may proceed when you're ready. Thank you, Your Honor. May it please the Court, my name is Jack Robinson. I represent Patrick G. and his parents, Stephanie and Daniel G. The District Court dismissed this case in its entirety based on mootness, stating that because this May 2016 IEP had expired, that all claims arising or related to that IEP are moot. The decision is wrong. The case is not moot as a threshold matter for three is not an appeal. It's not really related to the May 2016 IEP, but rather the complaint asserts a claim for the recovery of attorney's fees as the parents being a prevailing party, at least in part, at the administrative hearing. Second reason, the complaint includes a claim for the recovery of monetary reimbursement for tuition at Alpine and the provision of private OT occupational therapy and speech-language pathology services, including an argument, a claim that the payment for those expenses is due and owing to the parents, not the parents' insurance company. And let me ask you, it's not a question really of reimbursement for those services per se. They don't question that, right? The opposing counsel, it's a question of the alternative payee issue, the issue of whether it goes to the insurer or you. That's correct. In part, there's the payment for the school district, but one, this reimbursement piece or this payment piece goes to the attorney's fees as a threshold matter. The second is, is yes, at the outcome of, or at the outset of the due process hearing, the school district admitted, we'll pay what we withheld. We'll pay the, I can't remember how much it was, but we'll pay the tuition at Alpine, but we're going to pay it to the health insurance company. And we have a legal argument that we set forth that the payment is not due to the health insurance company. It's due to the parents. And if the parents have an obligation to the health insurance company, they pay it to the health insurance company. Well, okay, I get that. And I just want, therefore, I'm trying to get clear. You're saying, oh, there's the attorney's fees issue. Right. One. Right. Two, it's not a question of the money under the second one, right? It's a question of who the money goes to. It is. Well, the ALJ, the Administrative Law Judge, awarded to the parents the tuition reimbursement, but also the payment for the occupational therapy and speech language pathology services that the school district never agreed was owed, never paid, and still hasn't paid. But yes, the ALJ did award that to the parents, and it hadn't been paid. But yes, ostensibly, the school district is going to argue, we'll pay that to the health insurance company. We're not going to pay it to the parents. The school district is not challenging, at least on appeal. They haven't raised their own appeal on what the ALJ did. They didn't in the district court to the award of the speech pathology services and the occupational therapy. They didn't challenge that, right? Correct. They have not appealed. Okay. So then the only issue on that point is who the money goes to, right? Right. And there's also the issue of the $35 premium that's owed to the parents, directly to the parents. There's no dispute about that. There's no dispute about that either, right? They have not appealed that. Okay. They haven't challenged that. Well, then they're not challenging now. Okay. So you have three issues. What's the third issue? The third issue is midway through the appeal, the school district unilaterally, just abruptly, stopped paying for Alpine, stopped providing the speech therapy services that it had been providing. And it was never providing the occupational therapy services. But on October 19, 2019, they stopped his placement at Alpine. That is in direct violation of the IDEA's state put requirements, 1415J, that requires the school district to maintain that educational placement, its educational placement at Alpine, until this dispute is resolved. And they admitted that they had a state put obligation throughout these proceedings. But just out of the blue, they stopped his placement. You opened a realm of questions that I want to ask. So let me just get at the first one. Where is Patrick now? He's at Alpine? Yes. Okay. And let me try to understand the scope of the state put obligation. In your briefing, am I correct that you linked the state put obligation to the challenge to the 2016 IEP? Correct. Okay. Well, if the court finds that the 2016 IEP is moot, then why does the state put obligation continue? What is the premise for its continuance? Because it can't be moot. I mean, if the 2016 IEP is moot and the state put provision cannot be decided, then 1415J is meaningless. Well, no, it isn't. Because if the challenge was not moot, until you could determine whether your placement at Alpine was correct, if that was still a live controversy, then arguably you'd be able to stay put at Alpine. But that controversy regarding, as you framed it, I think, Alpine versus public school is no longer valid. I mean, you said the premise that absent the continuing exception, it's moot, right? It can't be moot. It can't be moot. Because the 1415J says during the pendency of any proceedings, including the district court appeal, the child must remain in the educational placement. Okay, let me narrow in on that for a second. The 2016 IEP had Mountain Vista as being the place where he should go, right? Okay. The appeal, your challenge to the 2016 IEP in the district court is now absent this continuing, whatever the exception is, continuing current, well, the continuing repetitive exception that allows you to avoid mootness. Absent that exception, that challenge to the 2016 IEP is moot, right? I'm arguing that it's not moot. And it can't be moot. And if it is mooted, then 1415J has no operative effect. The it is what? You're saying that even if we find that under all circumstances, your challenge to the 2016 IEP is not moot. Is that what you're saying? Right. Okay. All right. Well, work with me for a second. Let's assume that the challenge to the 2016 IEP is moot. That 2016 IEP had in it that Mountain Vista was his current educational placement, right? Wrong. I mean, that's not correct. The 2016 IEP did not have Mountain Vista as the place he would be? It does. Well, that's what I asked you. And if it has in it that that is his current, his place where he should be, and you cannot, working with me, that it is moot. You cannot challenge that IEP. Then what is there for a state, what is a state put order protecting? Because the current educational placement, which you cannot challenge because of mootness, is not Alpine. With all due respect, I think you're putting the cart before the horse, that the whole operative effect of 1415J from Hoening versus Doe, the United States Supreme Court decision, is that there's a dispute about a child's educational placement, Alpine versus Mountain Vista. And what 1415J gives to the parents is, I'm not going to place my child into what I believe to be an unsafe, dangerous placement. And so you're dealing with Alpine as the then current educational placement, and you have the school district imposing a different placement that the parents reject, object to. You filed a process complaint. The operative effect of 1415J is to maintain that status quo forever, or not forever, throughout all the proceedings. That's what the statute provides. That status quo... To the placement decision. Yes. Okay. Well, going with my hypothetical, there is no live challenge to the placement decision, because you cannot challenge the 2016 IAP. And if you can't challenge the 2016 IAP, there is no placement decision on the table, is it? There's only one and two on your list. There's the attorney's fees, and there's the question of the alternative payee. Other than that, there is no placement decision on the table, right? Well, I don't... I disagree. I mean, the placement decision, the state put issue, the controversy over state put, is live. And by statute, it remains a live controversy throughout the duration of, certainly, the district court appeal, and this appeal. That's what Conant v. Doe provides. That's what the statute provides. That's what this court's asking. Counsel, I've been struggling with the same question as Judge Holmes. Can I just approach it this way? Let's say we don't have 1415J, but we still have your claim that the 2016 IAP was a violation. If we don't have 1415J, would you agree that that claim is now moved? I agree. I would agree that it's technically moved, and our argument is that it falls within the exception to the mootness doctrine. Well, it's moved, but you still think it's not moved because it fits an exception? Correct. All right. Because most of your argument this morning seems to rescue mootness not by capable of repetition, but because of 1415J. So are you making a separate mootness argument about the 2016 IAP based on capable of repetition? Right. So our arguments, our briefs to this court, are basically the claims for reimbursement for attorney's fees are segregable. They're wholly independent from the appeal with regard to the adequacy of the May 2016 IAP. The first two, the attorney's fees and the reimbursement, and ostensibly the mootness or the 1415J statement argument, are not moot on this case. There's no mootness to it. The second, the appeal regarding the adequacy of the May 2016 IAP, I agree under Stephen R. F. and Nathan M. that technically, because the years passed, that it's technically moot, but there's an exception to the mootness doctrine. Well, OK, but doesn't Stephen R. F. preclude your capable of repetition argument? Let me recur. And now, several years later, we're no longer dealing with Mountain Vista. Things have developed. Things have changed. How is it capable of repetition under Stephen R. F.? Right. Because here, there's evidence in the record, unlike Stephen R. F. or Nathan M., that this not only is capable of repetition, but has repeated itself. The 2019, the 2020 IAPs are in the record, and they fall within the same educational placement dispute has replicated itself, repeated itself, to today. And two, the legal issue in this case is, under the IDEA, is irreconcilable positions between the parents and the school district with regard to the extent to which the IDEA requires a school district to provide services to address a disabled child's behavioral and functional needs, as opposed to purely academic needs. That's a legal issue that has not been resolved to today. And that's why we believe this case is distinct from Stephen R. F. and Nathan M. If I could reserve six seconds of my time, unless there's another question. You may. Thank you very much. Good morning, your honors, and may it please the Colorado Springs and represent Harrison School District 2, Colorado Springs, in this case. As the prior oral arguments just indicated, this case parallels very closely Nathan M. and Stephen R. F. in facts, procedures, payment of tuition, and services provided. Well, Mr. Stanek, let's pick up where Closing Counsel left off, and that is specifically, at least as I understood his argument, and in part referencing the 2019 and 2022 IAP, that there is a continuing issue relative to essentially behavioral versus educational goals and how that should factor into the IAP. And essentially, at least as I understood him, that's going to be a running battle that goes on, that discreet, distinct battle. So, number one, is that your understanding that there is, that in fact that is happening? And number two, what is the implication of it if it is happening? Thank you, your honor. No, that's not the position of the district whatsoever. We feel that that's a false dichotomy. You address both behaviors and academics in the IAP, and we've done so. There is not, as briefed, there is not a requirement and idea that a behavior intervention plan be developed, except for expulsion, that's not the case here. But rather, the IAP team consider the behavioral needs of the student, and they have done so repeatedly for this young man. He is not the behavioral problem. Whatever behaviors he does have are appropriately otherwise addressed in the IAP. His IQ is between a very low verbal 45 and a very high 117. He does not have behavioral problems. He has language problems. And he has, and that discrepancy indicates a strong ability to learn to read and write and do arithmetic and do other academic learning. So, the district does not approach it as a false dichotomy of either behavior or academics, but rather both. And they've done so repeatedly that they've reached different conclusions than the parents may prefer. Namely, now Harrison High School, most recently in 2021, he's had another IAP meeting. The team considered the behaviors, considered his behavioral needs, considered his academic needs. That's the requirement of an IAP team that he did so. And they recommended placement. They considered Alpine again. Alpine is exclusively behavior. They have applied behavioral analysis methodology that they use exclusively. The IAP team has members who also understand that same behavioral methodology and are very well trained in that academics and behavior and made the similar recommendations, but not because past recommendations were made, but rather idea requires review IAP meetings and reevaluations. Okay, let me, if I may, let me go down on two points. One, you're saying Alpine is exclusively behavioral. I think I saw some reference to that in the briefs as well. Do you mean that they don't try to educate the student at all? They will have, they have a curriculum. It's called the CARD curriculum, C-A-R-D. And that curriculum is also built upon applied behavioral analysis methodology, but they're not reading teachers. They're not speech pathologists. They're not teachers. They are trainers. They are RVTs and VCBAs. Those are people who are trained in behavioral analysis, but they are not licensed teachers. And so they don't, so you'll see in the, in the data, certainly the IAP team considered was that he was falling behind in his academics, not for lack of intelligence or ability to learn, but rather the need for specific instruction, specialized instruction of special education teachers, speech pathologists, the combined efforts, as well as addressing his behaviors. It was, it's not, it's not an exclusive one or the other. Okay. It's both. Okay. I understand that now. And let me focus on the capable repetition piece as it relates to what do we do with the fact that if you were to look at the track record of IAPs, the same dispute comes up every time. I mean, the argument, I think, in trying to distinguish our case law would be, this isn't just a general locking horn situation. This is a specific dispute that will continue to come up. Well, we hope it doesn't. I mean, from a, from a practical perspective, the district has had other students at Alpine where parents have, and where parents have changed, they've abided by the recommendation of an IAP team not to be at Alpine. Alpine, to its credit, has a loyalty, but sometimes that loyalty fails. And so from the district's perspective, the obligation under IDEA is to review and reevaluate and reconsider decisions made if those disagreements continue. The parents have their options to attempt to express their disagreements through the procedural protections. And certainly, they work hard to develop relationships and continue to keep their ideas in mind. There's another thing I think, Your Honor, that is important to keep in mind. Alpine does not give credit. And this young man is in high school. And so he isn't accumulating credit to graduate from high school if, if he maintains at Alpine. And so the, the, the inability to gain academic skills is not just skills, it's academic credit. As he matriculates, he's 15, he's going into high school. He is now, he's been at Alpine for a long time. It's an isolated setting, only students with disabilities. The, his typical high school setting is well prepared for his behaviors and his academics. And so all of those considerations come into play of whether it's appropriate to maintain him in a setting. And that's true of other, of other students as well, in terms of that consideration. Yes, just a minute. I'm still a little puzzled about the capable repetition issue. The constant conflict here seems to be a question of whether it's going to be Alpine or a public school. That, that has been consistent conflict throughout the 2016 IEP, the 2019, the 2020. You're saying, well, you hope it isn't going to recur, but it has recurred. It keeps recurring. Now, why should the parents have a chance for judicial review of that issue? It seems that if the district replaces the one IEP with another IEP, is that always going to move this thing out? Why, why shouldn't the court be able, or why shouldn't the parents get a judicial review when they, when the record consistently shows the exact same conflict over three IEPs? Your Honor, the, I guess the answer to that would be that there's not a policy that the district has against Alpine or against the methodology or against those services. Well, I'm asking more for your legal analysis of the movements capable of repetition issue. If we could, if we could apply movements doctrine to what you're saying. Okay. The, I guess I, where I go back to is in Nathan-Ann, where the court saw the, the, the locking of horns and that despite the best efforts of the district and working with the parents, there is no animus, there's nothing like that, that the, the district continues to use its good judgment and that the, in Nathan-Ann, the court saw that this locking of horns did not sharpen into a legal dispute. That is, that cannot be hypothetical. And so, although they too saw that it, that the parents liked what they had at Alpine and the IEP team judged something different, that that locking of horns did not, locking of horns did not sharpen into a legal dispute that would warrant the continuing passiveness. I, I guess following up, the, the question on this whole legal dispute issue, okay, would, isn't the question, on one end of the continuum is a locking, general locking of horns, for whatever reason we keep The other, on the other end, is now we're talking substantive issues. If substantive IEP, there is, let's say there is a determination made every time that says X. And we, and if you look at the 19, 2019, 2020, and now you tell us 2021, that the same X determination is made. Why isn't the plaintiff or the parents in a situation of saying, I know what's going to happen next year, which is they'll make the same determination. We will have a legal, if you want to frame it that way, philosophical dispute on how to weigh behavior versus education. And the IEP team will come down on the side of education and Mountain Vista or some other public institution. If we know that's going to happen, why isn't it a capable of repetition problem and not just a generalized, we're going to fight every year? Okay, I think your honor, what helps certainly me in this, in that, in that distinction, is that there's a conflation between the placement and the setting. And that Alpine is the setting. And it actually does deliver the IEP in the record parents attorney has a representative of Alpine indicating they do not follow the idea. They follow their own documents of behavior planning. They have their own goals and objectives. They develop that, those goals and objectives in that behavior planning document outside of the IEP team. Even if we had a BIP, Alpine wouldn't deliver it. They're not licensed to deliver it and they setting is distinct from the IEP process that has developed the placement for him, for Patrick. And looking at all of the evaluation data, the psychological evaluation data, the educational evaluation data, the speech pathology information, all of that goes to the development of the IEP. And so the process of the IEP meeting then ultimately lands itself in the placement. And that placement under Erickson and versus Albuquerque School, 1999, references that placement being changed is a fundamental change in an alteration of the IEP. And so it's, the placement is a, is a construct of the IEP itself. And the IEP meeting progressively develops that IEP. Then there's a discussion of the setting. And the setting in which it would be delivered. Obviously that the district prefers a location that delivers that IEP. So I think there's some conflating between Alpine as a setting that does its, its behavior planning separate from the IEP meeting and the IEP meeting itself. And how, again, the educational responsibilities of the school district is not just to address the behavior and address the education of the student, but also having him progress appropriately academically so that he can graduate from high school, which he's very well capable of. But the continuing educational placement that Erickson addressed, I mean, we haven't held, we haven't made a holding similar to the one in Erickson, have we? In this case? No, period. I mean, as I understand the Erickson point was that continuing educational placement goes to the substance of the services provided and not the setting. Correct. We haven't held that. Correct. Okay, then that's an issue of dispute, right? Why isn't that a legal issue of dispute? Well, because as you were referencing earlier, Judge Holmes, that the, that what it looks to is the IEP. And it would be required to look to that 2016 IEP that's moved. And that if I heard opposing counsel correctly, just conceded that both procedurally and substantively that 2016 IEP is moved. And that would be required to looking at things that are... Counsel, counsel. I'm sorry. I think there's a distinction between it being moved on the one hand, but whether an exception to move this applies. Yes. Wasn't that what was being argued that even if it was moved, it was capable of repetition? Correct. And the capable of repetition looked at each issue within the IEP procedurally and substantively and determined that it was moved. As with Nathan M. But what you're saying is it's not capable of repetition. Correct. Yes. Thank you, counsel. You're welcome. You can have, you can have a minute. Okay. Well, I think that the comments by counsel for the school district highlight exactly why this dispute needs to be decided. And it does highlight the operative effect of 1415J that you have, that the IDEA specifically says that in a placement dispute, and this is a placement dispute, and it's a provision of a faith dispute, that that status quo cannot change until that is finally decided. And it was never finally decided. I mean, it wasn't an issue. Let me be clear here. This was not an issue until two years after the appeal had been appending in the district court. What is your issue that is capable of repetition? Just spell it down and make it clear. What is your legal issue that is capable of repetition? Well, one, I would say that it has repeated itself. And on the record, it has repeated itself. What's the it? That this irreconcilable position on the extent to which the IDEA requires a school district to provide services to address a disabled child's behavioral and That is that the school district is interpreting and applying the IDEA as emphasizing academic skills versus behavioral skills. And it was borne out in counsel's argument that a behavior intervention plan is not even required. But the IDEA is clear that education, with a capital D, encompasses both academics, communication, behavior, and functioning to allow a child, especially a severely autistic child like Patrick, to become a functioning member of society. They talk about credits. He's not going to graduate from college. I mean, from high school. He's not going to have academic credits. This is, and I'll remind the court, too, that the You've already gone over by now. Unless there are any questions, the case is submitted. Thank you very much. Thank you, counsel, for the fine argument.